FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JAN 1 2 2015   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSEPH LICATA,

               Plaintiff,

  -against-

KAREN B. SALMON and BAY SHORE SCHOOLS,

               Defendants.
----------------------------------------------------------------X

14-CV-2637 (SJF)(GRB)

**OPINION & ORDER**

FEUERSTEIN, J.

      On April 25, 2014, *pro se* plaintiff Joseph Licata ("plaintiff") commenced this action against defendants Karen B. Salmon ("Salmon") and Bay Shore Schools ("the School District") (collectively, "defendants"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. § 792, *et seq.*; and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983"). Pending before the Court are: (1) plaintiff's motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction enjoining defendants from denying his son "[m]ini [b]us transportation [f]rom ACLD to [h]ome[;]" and (2) defendants' cross motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim for relief. For the reasons stated herein, the branch of defendants' cross motion seeking to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted and, thus, plaintiff's motion is denied.

1

I.  Background

   A.  Factual Background

      1.  Factual Allegations in the Complaint

Plaintiff's son is fourteen (14) years old, "is mentally retarded with autism and has [a] [psychiatric] disorder." (Complaint ["Compl."], ¶ III(C)). Plaintiff's son has an individualized education program ("IEP") with the School District which, according to plaintiff, includes his attendance in an "ACLD special education after school program" ("the ACLD program") (Id.)[1] The School District provides transportation to plaintiff's son from his school to the ACLD program, "[b]ut refuses to pick [him] up and take him home." (Id.) According to plaintiff, although Russell Endes ("Endes"), the School District's Director of Pupil Personnel, "tried to give [his son] the transportation home[,] Karen Salmon said no." (Id.)

      2.  The IEP

Although the IEP approved by the School District's Subcommittee on Special Education on March 28, 2013 for the period from July 1, 2013 to June 27, 2014 includes multiple "special education programs and related services" to be provided by the School District to plaintiff's son, his attendance in the ACLD program is not included as such a program or service. (Declaration of Melissa L. Holtzer in Support of Defendants' Motion to Dismiss and in Opposition to Plaintiff's Order to Show Cause ["Holtzer Decl."], Ex. B at 1-2). Rather, the only reference in the IEP to plaintiff's son's attendance in the ACLD program is in the section entitled "Student

---

[1] Plaintiff is referring to the "After-School Therapeutic Recreation Program" offered by Adults & Children with Learning and Developmental Disabilities, Inc. ("ACLD") at two (2) locations in Bay Shore, New York. See www.acld.org/page.aspx?pid=439#afterschool.

2

Information Summary" next to the heading "Special Alerts" which, *inter alia*, provides information about his medical condition(s) and the medication he takes at home and includes a notation that "student to attend after school program at YMCA 2x per week."[2] (Id. at 1). According to Endes, whose duties as the Executive Director of Pupil Personnel Services for the School District include being the chairperson of the School District's Committee on Special Education ("CSE"), (Endes Aff., ¶¶ 1-2), the ACLD program was mentioned as a "Special Alert" on plaintiff's son's IEP because the CSE "need[ed] to alert [his] teacher to the fact that [he] [would] be transported to the program, and not to his home, two days per week." (Endes Aff., ¶ 4).

In addition, two (2) School District forms entitled "I.E.P. Special Transportation for Special Needs Students Only," both dated March 28, 2013, indicate, *inter alia*, that the School District would provide specialized transportation for plaintiff's son in a mini van for "behavior/safety reasons" with a "group driver assistant" so that he could attend summer services from July 1, 2013 until August 9, 2013, (Holtzer Decl., Ex. B at 16), and an "after school program at the YMCA 2x per week" in the Fall, beginning September 4, 2013.[3] (Id. at 17).

According to Endes, the School District considers the ACLD program "to be an afternoon

---

[2] The "Student Information Summary" section of the IEP "reference[s] a student's native language, his or her parents' contact information, and any 'special alerts' that need to be made to the student's teacher." (Affidavit of Dr. Russel Endes ["Endes Aff."], ¶ 4).

[3] The IEP provides plaintiff's son with "specialized Transportation with a group matron for both summer and fall[] [f]or health/safety issues." (Holtzer Decl., Ex. B at 2). Specifically, the IEP provides the following "special transportation accommodations/services * * *: Adult supervision - Group Driver Assistant [and] Type of Transportation - Small Bus or Vehicle [and] Door to Door Transportation." (Id. at 15). Notably, the provision specifically authorizing "transportation to and from special classes or programs at another site[]" was not marked off in the IEP for plaintiff's son. (Id.)

3

day care situation, not an educational service." (Endes Aff., ¶ 3). The School District does not pay for plaintiff's son to attend the ACLD program, nor did its CSE recommend that he attend the ACLD program. (Id.) Moreover, Endes avers that the School District "transports [plaintiff's son] to the ACLD because it would ordinarily provide him with transportation home at the end of the school day[,] * * * [but] is not responsible for transporting [him], or any other student, home from an after-school activity." (Id. at 6).

### 3. Plaintiff's Affidavit

In his unsworn affidavit submitted in support of his application for a preliminary injunction, plaintiff avers that he is "suffering serious immediate harm" because, *inter alia*: (1) his son's grandmother, who "was always there at ACLD to help pick him up[,]" passed away on April 1, 2014; (2) since her death, his son "has to be [sic] increased supervised [sic] during bus pickup in the morning and after school and mainly at ACLD after school program[;]" (3) "[a]s a parent [plaintiff] cannot give [his son] the transportation and aide services he needs at ACLD[;]" and (4) "[w]ithout appropriate mini bus transportation home[,] [his son] will eventually run away." (Affidavit of Joseph Licata ["Plf. Aff."] at 2).

In the section of the form affidavit asking plaintiff to "state why [he] think[s] [he] will most likely win th[is] case in the end[,]" plaintiff wrote:

> "Facts from [his son's] psychiatrist that has over 30 years experience and unstersand [sic] ACLD ben[e]fits. 1973 Rehabilitation Act 504 automatically protects [his son]."

(Plf. Aff. at 2).

In the section of the form affidavit asking plaintiff to state "why [he] think[s] the harm to

4

[him] is more serious than any harm [defendants] will suffer if the judge orders a preliminary injunction * * *[,]" plaintiff wrote: "School attorneys, Karen Salmon do not have a mentally retarded child * * * or a child that wants to run to Texas." (Plf. Aff. at 2).

Plaintiff annexed to his affidavit the following documents:

(1) An unsworn letter from plaintiff to Judge Bianco[4] indicating, *inter alia*, that the School District "does not have no after school theraputic [sic] programs for children with disabilities at the middle school" and that Section 504 of the Rehabilitation Act "clearly states if a student has to go elsewhere for after school programs - activities, transportation must be provided * * *."

(2) A letter from Dr. Dominic Zanolin from Suffolk Pediatric Associates, P.C., dated May 14, 2014, *inter alia*, "strongly recommend[ing] that [plaintiff's son] receive bus transportation after his afternoon activity."

(3) A letter purportedly written by plaintiff's son.

(4) A copy of the section(s) of the Rehabilitation Act that plaintiff claims is applicable to this case.

(5) A report by Emily Balles, a Certified Therapeutic Recreation Specialist with the ACLD program, dated January 6, 2014, indicating, *inter alia*, that plaintiff's son attended the ACLD program "with the focus of increasing his social and interactional skills with peers through active participation in various recreational activities throughout the program day[] * * * [and] goals [] to further enhance his

---

[4] This action was originally assigned to the Honorable Joseph F. Bianco, United States District Judge, but was reassigned to me on May 30, 2014 upon Judge Bianco's recusal. (Docket Entry ["DE"] 20).

leisure lifestyle awareness and choice making skills necessary for the future[,]" and recommending that he "continue to attend the [ACLD Program] * * * to continue to address his social and interactional needs, as well as to further enhance his leisure lifestyle awareness and choice making skills that will benefit him in the future."

(6) A note from Dr. Mala Iyer, a psychiatrist at the Child and Family Wellness Center in Lake Grove, New York, indicating, *inter alia*, that she "feel[s] that it is very important for [plaintiff's son] to be given transportation from ACLD back home[] [because] [h]e is unable to negotiate going home by himself, and his father has to care for his sister, who is all challenged * * *."

(7) Three (3) prescriptions from medical providers, including a prescription from Dr. Iyer, dated May 6, 2014, indicating that plaintiff's son "requires transportation to and from [the] ACLD [Program], which is a very important part of his IEP [and] treatment plans." (Plf. Aff., Ex. 7).

B. Procedural History

On April 25, 2014, plaintiff commenced this action against defendants alleging, in essence, violations of the IDEA, the Rehabilitation Act and Section 1983. Pending before the Court are: (1) plaintiff's application pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction enjoining defendants from denying his son "[m]ini [b]us transportation [f]rom ACLD to [h]ome[;]" and (2) defendants' cross motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of

subject matter jurisdiction and failure to state a claim for relief.

II. Discussion

    A. Rule 12(b)(1)

        1. Standard of Review

As plaintiff is proceeding *pro se*, his submissions "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); accord Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading and dismissal. See Caidor v. Onondaga County, 517 F.3d 601, 605 (2d Cir. 2008) ("*Pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them."); Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (holding that a party's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." (quotations and citation omitted)).

"Federal courts are courts of limited jurisdiction," Gunn v. Minton, — U.S. —, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); see also Mims v. Arrow Fin. Servs., LLC, — U.S. —, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (holding that federal courts may not exercise jurisdiction absent a statutory basis); Kokkonen, 511 U.S. at 377, 114 S. Ct. 1673 (holding that federal courts "possess only that power authorized by Constitution and statute * *

7

\*.") Lack of subject matter jurisdiction cannot be waived or forfeited and may be raised at any time by a party or by the court *sua sponte*. See Gonzalez v. Thaler, — U.S. —, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012); see also Sebelius v. Auburn Reg'l Med. Ctr., — U.S. —, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 131 S. Ct. 1197, 1202, 179 L. Ed. 2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. * * * Objections to subject-matter jurisdiction * * * may be raised at any time.") If a court lacks subject matter jurisdiction, it must dismiss the action. See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

"In resolving a motion to dismiss under Rule 12(b)(1), [] district court[s] must take all uncontroverted facts in the complaint * * * as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014); see also Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011), cert. denied, 133 S. Ct. 2388, 185 L. Ed. 2d 1104 (2013) ("In reviewing a facial attack to the court's jurisdiction, [courts] draw all facts– which [are] assume[d] to be true unless contradicted by more specific allegations or documentary evidence– from the complaint and from the exhibits attached thereto.") However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the

pleadings[.]" Tandon, 752 F.3d at 243 (quotations, brackets and citations omitted); see also Amidax Trading, 671 F.3d at 145 ("To the extent that [defendants'] Rule 12(b)(1) motion placed jurisdictional facts in dispute[,] * * * the district court properly considered evidence outside the pleadings.") "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Tandon, 752 F.3d at 243 (quotations and citation omitted); see also Mastafa v. Chevron Corp., 770 F.3d 170, 177 (2d Cir. 2014).

### 2. IDEA Claim

"The IDEA's central mandate is to provide disabled students with a 'free appropriate public education' in the least restrictive environment suitable for their needs." Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008); see also Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 481-82 (2d Cir. 2002) ("The IDEA * * * mandates federal grants to states to provide disabled children with 'a free appropriate public education' in the least restrictive appropriate environment.") "Under the educational scheme of the IDEA * * *, parents of students with disabling conditions are guaranteed 'both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" Cave, 514 F.3d at 245 (quoting Honig v. Doe, 484 U.S. 305, 311-12, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)). "Educators and parents of a child covered by the IDEA must jointly develop an 'individualized education program' ('IEP') for each year of the child's education." Polera, 288 F.3d at 482. "The IEP is the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education." Id.

"The IDEA requires that states offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child[.]" Polera, 288 F.3d at 482 (citing 20 U.S.C. § 1415(a)[5]). "If a parent believes that her child's IEP or the school's implementation of the IEP does not comply with the IDEA, the parent may file a 'due process complaint' with the appropriate state agency." B.M. v. New York City Dep't of Educ., 569 F. App'x 57, 58 (2d Cir. June 18, 2014) (summary order) (citing 20 U.S.C. § 1415(b)(6)[6]; see also Cave, 514 F.3d at 245 ("Parents are * * * entitled to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" (quoting 20 U.S.C. § 1415(b)(6)(A))); 20 U.S.C. § 1415(f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) * * *, the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.") "Districts are then permitted a thirty-day 'resolution period' to address alleged deficiencies

---

[5] Section 1415(a) provides: "Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies."

[6] Section 1415(b) provides, in relevant part: "The procedures required by this section shall include the following: * * * (6) An opportunity for any party to present a complaint– (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and (B) which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph."

without penalty." B.M., 569 F. App'x at 58 (citing 20 U.S.C. § 1415(f)(1)(B)[7]). "Once the resolution period has run, a parent may continue to a due process hearing before an independent hearing officer ('IHO') and appeal the resulting decision to a state review officer ('SRO')." Id. (citing 20 U.S.C. § 1415(f)[8]; see also 20 U.S.C. §§ 1415(g)(1) ("If the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such hearing may appeal such findings and decision to the State educational agency") and (g)(2) ("The State educational agency shall conduct an impartial review of the findings and decision appealed under paragraph (1). The officer conducting such review shall

---

[7] Section 1415(f)(1)(B)(i) provides, in relevant part: "Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint– (I) within 15 days of receiving notice of the parents' complaint; (II) which shall include a representative of the agency who has decisionmaking authority on behalf of such agency; * * * and (IV) where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint, unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e)."

Section 1415(f)(1)(B)(ii) provides: "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence."

[8] Section 1415(f)(3)(C) provides: "A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows."

Section 1415(f)(3)(D) provides, in relevant part: "The timeline described in suparagraph (C) shall not apply to a parent if the parent was prevented from requesting the hearing due to– * * * (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent."

11

make an independent decision upon completion of such review.") "Only after exhaustion of th[e] procedures [set forth in Section 1415 of the IDEA] has an aggrieved party the right to file a suit in a federal or state court." Cave, 514 F.3d at 245 (citing 20 U.S.C. § 1415(i)(2)(A)[9]); see also Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 204-05 (2d Cir. 2007) ("It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court. . . ." (quoting J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir. 2004))).

The Second Circuit has held that "[f]ailure to exhaust the administrative remedies [set forth in the IDEA] deprives the court of subject matter jurisdiction." Cave, 514 F.3d at 245; see also Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x 131, 133 (2d Cir. Sept. 14, 2012) (summary order); Polera, 288 F.3d at 483[10] "The purpose of the

---

[9] Section 1415(i)(2)(A) provides, in relevant part: "* * * [A]ny party aggrieved by the findings and decisions made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought * * * in a district court of the United States, without regard to the amount in controversy."

[10] Although "the Second Circuit, in dicta, has called into question its precedents finding the IDEA's exhaustion requirement to be jurisdictional * * * binding Second Circuit decisions * * * continue to hold * * * that a plaintiff's unexcused failure to exhaust the administrative remedies set forth in the IDEA divests the district court of jurisdiction." M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist., No. 13-cv-3596, 2014 WL 901578, at * 5 n. 4 (S.D.N.Y. Mar. 3, 2014) (citing Cave, 514 F.3d at 245). In any event, even if no longer considered to be jurisdictional, defendants have challenged plaintiff's failure to exhaust "from [their] first opportunity, mooting the determination whether the exhaustion requirement is jurisdictional or operates as an affirmative * * * defense." B.M., 2014 WL 2748756, at * 1; see also Coleman, 503 F.3d at 204 ("[W]e are not forced to decide whether our precedent, which labels the IDEA's exhaustion requirement as a rule affecting subject matter jurisdiction rather than an 'inflexible claim-processing' rule that may be waived or forfeited, remains good law after [certain Supreme Court decisions] because there can be no claim of waiver or forfeiture here[]. Defendants have consistently challenged the district court's exhaustion ruling throughout this litigation.") "Whether or nor the exhaustion requirement is jurisdictional, exhaustion of administrative remedies is a prerequisite to a civil suit unless the plaintiff can allege that an exception should

12

exhaustion rule is to 'channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.'" Cave, 514 F.3d at 245-46 (quoting Polera, 288 F.3d at 487); see also J.S. ex rel. N.S., 386 F.3d at 112 ("Exhaustion of administrative remedies is required under the IDEA so that disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances."); Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 790 (2d Cir. 2002) ("[T]he IDEA's administrative remedies scheme is * * * critical because it allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." (quotations and citation omitted)).

Although plaintiff conclusorily contends that defendants' contention that he failed to exhaust his administrative remedies is "[f]alse and misleading" and that he "has been using all his remedies," (Plf. Opp. at 6), nowhere does he claim to have filed a due process complaint with the appropriate state agency, sought a due process hearing, etc. Thus, plaintiff has not established by a preponderance of the evidence that he exhausted his administrative remedies under the IDEA.

---

apply." Levine v. Greece Cent. Sch. Dist., 353 F. App'x 461, 463 (2d Cir. Nov. 12, 2009) (summary order). Moreover, even if "merely an affirmative defense," id., where "the complaint on its face shows that there is no possibility that it could be amended to allege facts that, if true, would demonstrate that the plaintiff satisfied the exhaustion requirement, failure to exhaust is a proper ground for a motion to dismiss." Id.

## 2. Rehabilitation Act and Section 1983 Claims

"[C]omplainants must overcome th[e] * * * [exhaustion] hurdle not only when they wish to file a suit under the IDEA itself, but also whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint." Cave, 514 F.3d at 246 (emphasis in original); see also 20 U.S.C. § 1415(*l*) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, * * *, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791, *et seq.*], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*" (emphasis added)); J.S. ex rel. N.S., 386 F.3d at 112 ("The [IDEA's] exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA.") "The language of Section 1415(*l*) of the IDEA is sufficiently broad and encompasses complaints asserted under *any* federal statute, as long as they seek relief available under the IDEA[,]" Cave, 514 F.3d at 248 (emphasis in original), including claims under the Rehabilitation Act and Section 1983. See, e.g. Id. at 248-49 (holding that Section 1983 claims fall "within the scope of Section 1415(*l*) to the same extent as * * * claims under the ADA or the Rehabilitation Act."); J.S. ex rel. N.S., 386 F.3d at 112 ("As the district court correctly noted, the students asserted a section 504 Rehabilitation Act claim and a section 1983 claim that both seek to ensure a free appropriate public education, thus subjecting both to the IDEA exhaustion requirement.")

Plaintiff seeks only injunctive relief in this action and is essentially alleging that

14

defendants denied his son a free appropriate public education, i.e, an appropriate related service to his IEP, during the 2013-2014 academic year, which is within the ambit of the IDEA, see, e.g. Polera, 288 F.3d at 488 ("The IDEA is intended to remedy precisely the sort of claim made by [the plaintiff]: that a school district failed to provide her with appropriate educational services"), and "best dealt with through the [IDEA's] administrative process." Cave, 514 F.3d at 247-48. Accordingly, all of plaintiff's claims are subject to the IDEA's exhaustion requirement.

### 3. The Futility Exception

"The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy." Cave, 514 F.3d at 249; see also Polera, 288 F.3d at 488 (accord). "To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." Coleman, 503 F.3d at 205 (quoting J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist., 830 F.2d 444, 447 (2d Cir. 1987)); see also Cave, 514 F.3d at 249 ("[T]he exhaustion requirement does not apply 'when pursuit of the administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury.'" (quoting Heldman ex rel. T.H. v. Sobol, 962 F.2d 148, 159 (2d Cir. 1992))). The Second Circuit has "accepted arguments of futility where parents were not informed of administrative remedies, * * * where the state agency was itself acting contrary to law, * * * where the case involves systemic violations that could not be remedied by local or state administrative agencies, * * * where an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical

health) * * *[,]" Baldessarre, 496 F. App'x at 134 (quotations and citations omitted), or "where the complaint alleges that the defendant school district 'had failed to implement the clearly-stated requirements of the IEPs.'" Stropkay v. Garden City Union Free Sch. Dist., — F. App'x —, 2014 WL 6778397, at * 2 (2d Cir. Dec. 3, 2014) (summary order) (quoting Polera, 288 F.3d at 488).

In addition, "if plaintiffs can demonstrate that there is no relief available to them through the administrative process, they may avail themselves of the futility * * * exception[] to the exhaustion requirement * * *." Taylor, 313 F.3d at 790. "Relief available means relief for the events, condition, or consequences of which the person complains, even if not necessarily relief of the kind the person prefers." Id. (quotations, brackets and citation omitted). "For relief to be adequate, it must 'give realistic protection to the claimed right.'" Coleman, 503 F.3d at 205 (quoting Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002)).

"The party seeking to avoid exhaustion bears the burden of showing futility." Cave, 514 F.3d at 249; see also Coleman, 503 F.3d at 205 ("The burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement.") As courts analyze whether a plaintiff has sustained the burden of showing futility, they "are to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." J.S. ex rel. N.S., 386 F.3d at 113.

### a. Systemic Violations

The Second Circuit has "excused exhaustion in cases involving systemic violations that could not be remedied by local or state administrative agencies 'because the framework and procedures for assessing and placing students in appropriate educational programs were at issue,

or because the nature and volume of complaints were incapable of correction by the administrative hearing process.'" Cave, 514 F.3d at 249 (quoting J.S. ex rel. N.S., 386 F.3d at 114); see also Levine, 353 F. App'x at 465.

Plaintiff's complaint challenges only defendants' purported denial of his request that his son be provided transportation home from the ACLD program during the 2013-2014 academic year. There are no factual allegations in the complaint from which it may reasonably be inferred that there is "a system-wide violation of the IDEA's mandates or of a district-wide policy of discrimination against [similarly disabled] students [as plaintiff's son]," Cave, 514 F.3d at 250, in the School District, nor "that the administrative process is so structurally tainted that [plaintiff] would not have been afforded a fair and impartial forum to present his claims." Id. Since plaintiff is challenging only defendants' treatment of his son, individually, it would not have been futile for plaintiff to exhaust administrative remedies on this basis.

b. Emergency Situation

Plaintiff contends that this case presents an "emergency situation that [his son] receives the proper supervised Mini bus transportation he needs." (Plf. Opp. at 6).

Plaintiff does not allege that the School District ever failed to provide transportation to his son from his school to his home when he did not attend the ACLD program; only that the School District refused to drive his son home from the after-school, extracurricular ACLD program. Although plaintiff repeatedly refers to his dilemma in transporting and supervising two (2) disabled children, and to the irreparable harm that may result if he had to do so, there would be no such dilemma or harm if his son stopped attending the ACLD program while plaintiff

17

pursued his administrative remedies, since the School District would provide the specialized transportation required by the IEP for plaintiff's son to travel from his school to his home. Plaintiff has not demonstrated that "the delay that would have occurred in exhausting the administrative processes, which may have entailed his [son] missing * * * participation in [the ACLD Program], would have affected [his son's] mental or physical health[,]" Coleman, 503 F.3d at 206, e.g., that there would be any regression in the social skills and "appropriate peer interactions" plaintiff's son developed by his attendance in the ACLD program, or any affect in his anxiety level, (see Note by Dr. Iyer dated July 30, 2014 attached to Plf. Opp.), by his temporary absence from the ACLD program while plaintiff pursued his administrative remedies. Accordingly, and since, *inter alia*, "the emergency situation exception is to be sparingly invoked," Coleman, 503 F.3d at 206 (quotations and citations omitted), plaintiff has not satisfied his burden of showing futility under this basis either.

c. Availability of Administrative Relief

In Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138 (2d Cir. 2002), the Second Circuit held that "[e]xhaustion [under the IDEA] will be excused where * * * the parents have not been notified that [administrative] remedies were available to them[] * * * because the failure of the defendants to notify [them] of their procedural rights under the IDEA 'deprived [them] of the opportunity to take advantage of the procedural safeguards offered by the statute.'" Id. at 149 (fourth brackets in original) (quoting Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 147 (2d Cir. 1983)); see also J.G. by Mrs. G., 830 F.2d at 447. Plaintiff does not allege that he was not notified of available administrative remedies, nor that administrative remedies were

otherwise unavailable to him or inadequate. Although the complaint alleges, in essence, that defendants failed to implement a requirement of his son's IEP, the evidence demonstrates that plaintiff's son's attendance in the ACLD program, and his transportation home therefrom, were not "clearly-stated requirements of [his] IEP." Indeed, plaintiff only sought such transportation upon the death of his son's grandmother, as she was the person who had picked his son up from the ACLD program prior to her death. Since plaintiff's son's IEP did not clearly state that his attendance in the ACLD program, or his transportation home therefrom, were obligations of the School District, the administrative process could have provided plaintiff with "appropriate and expeditious relief." Polera, 288 F.3d at 489.

Since plaintiff has not satisfied his burden of demonstrating that he exhausted available administrative remedies under the IDEA, or that his pursuit of administrative remedies would have been futile, the branch of defendants' cross motion seeking dismissal of the complaint for failure to exhaust administrative remedies is granted and plaintiff's complaint is dismissed in its entirety for his failure to exhaust administrative remedies.[11]

III. Conclusion

For the reasons stated herein, the branch of defendants' motion seeking dismissal of the complaint in its entirety pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is

---

[11] Since this Court lacks subject matter jurisdiction over this action, it may not consider defendants' remaining contentions seeking dismissal of plaintiff's claims on the merits, nor plaintiff's application for a preliminary injunction, which requires, *inter alia*, a determination of the likelihood of success on the merits. Accordingly, the branches of defendants' motion seeking dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and plaintiff's application for a preliminary injunction, are denied.

19

granted and the complaint is dismissed in its entirety for plaintiff's failure to exhaust administrative remedies. The Clerk of the Court shall close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order on all parties as provided in Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

SO ORDERED.

s/ Sandra J. Feuerstein
SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 12, 2015
 Central Islip, N.Y.